# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLES ANDERSON, individually and on behalf of all similarly situated persons, ) ) ) | |
| Plaintiffs, ) ) ) | |
| v. ) ) | No. 11 C 7188 |
| HOLY SEE, a foreign sovereign; THE CATHOLIC BISHOP OF CHICAGO, a corporation sole, individually, and on behalf of all other Roman Catholic Archdioceses, Dioceses, Exarchates, and/or Eparchies, as Agents of the HOLY SEE and Necessary Parties Herein, in the United States of America, the District of Columbia, and Its Territories and Protectorates within the U.S. Commonwealth, ) ) ) ) ) ) ) ) ) ) ) ) | Judge Ruben Castillo |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Charles Anderson, individually and on behalf of a putative class, brings this action against the Holy See, the Catholic Bishop of Chicago ("Bishop"), and all administrative units of the Roman Catholic Church ("Church") in the United States (collectively, "Defendants"), alleging that he was sexually abused by priests and other employees of the Church in the 1950s and 1960s. (R. 1, Compl.)[1] Presently before the Court is the Bishop's motion to dismiss pursuant to Rules 12(b)(6) and 8(a) of the Federal Rules of Civil Procedure. (R. 18, Def.'s Mot.) For the reasons stated below, the motion is granted.

---

[1] Anderson alleges federal jurisdiction pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-11, and 1330, the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), and 28 U.S.C. § 1367. (R. 1, Compl. at 1-2.)

**RELEVANT FACTS**[2]

Anderson is currently an inmate at Shawnee Correctional Center in Vienna, Illinois. (R. 1, Compl. ¶ 1.) The Holy See is a foreign sovereign that directs the activities of the Church in the United States. (*Id.* ¶¶ 6-7.) Such direction includes assigning and supervising bishops who are vested with authority to oversee and remove clergy within local Archdioceses. (*Id.* ¶¶ 6, 12.) The Bishop is appointed by the Holy See and administers the Church's Chicago Archdiocese ("Archdiocese"). (*Id.* ¶ 6.)

During the 1950s and 1960s, Anderson was a minor resident of Maryville Academy in Des Plaines, Illinois, and St. Joseph's Orphanage in Lisle, Illinois. (*Id.* ¶ 1.) Anderson alleges that during his term of residency at these facilities, two priests and four laymen, all employees of the Church, sexually abused him on numerous occasions, starting before he was ten years old. (*Id.* ¶¶ 63-73.) Since reaching the age of majority, Anderson has spent much of his life in penal institutions and has required continuous psychological and psychiatric counseling; Anderson traces these circumstances to the abuse he suffered as a minor. (*Id.* ¶ 74.)

In 2002 or 2003, Anderson retained counsel to seek redress for the abuse. (*Id.* ¶ 75.) He did not immediately commence an action against the Bishop; instead, he first attempted to reach an out-of-court settlement. (*Id.* ¶ 79; Ex. A.) Anderson wrote the Archdiocese on April 15,

---

[2] Anderson's complaint contains a lengthy survey of the "History of the Widespread Problem of Clerical Sexual Abuse of Minors and the Holy See's Management of Its Problem," including a description of the Holy See's activities in the United States, its relationship to clergy including the Bishop in the United States, and its policies with respect to sexual abuse claims. (R. 1, Compl. ¶¶ 6-60.) The Court will recount only those allegations pertinent to the present motion, accepting as true those allegations that are well-pleaded and drawing all reasonable inferences in Anderson's favor. *Hallinan v. Fraternal Order of Police Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

2005, and stated that he would agree not to file a lawsuit if the Bishop agreed not to invoke the relevant Illinois statute of limitations, which he admits "would or could" bar his sexual abuse claim because the sex abuse "occurred a sufficient number of years in the past." (*Id.* ¶¶ 1, 79; Ex. A.)

The Archdiocese then initiated an investigation. On November 4, 2005, employees of the Archdiocese visited Anderson at Shawnee Correctional Center and obtained statements from him that describe the abuse in detail. (*Id.* ¶ 77; Grp. Ex. D.) Anderson signed a transcribed version of these statements on July 16, 2006. (*Id.*) The Archdiocese subsequently informed Anderson in a letter on December 15, 2006, that his claim as to one of the priests, Father Thomas Windham, was invalid because Windham had already been removed from the clergy. (*Id.*; Ex. B.) On March 28, 2007, the Archdiocese wrote Anderson and informed him that the remaining investigations were not yet complete, but that it was "interested in learning what [Anderson] need[ed] in order to heal." (*Id.* ¶ 78; Ex. B.) In a subsequent letter to Anderson dated May 11, 2007, the Archdiocese noted that his claims were barred by the statute of repose, but that it would nevertheless discuss the claims with Anderson after receiving his demand and completing its review of the allegations. (*Id.* ¶ 78; Ex. C.) Anderson submitted a written monetary demand on June 6, 2007, requesting $6,500,000. (*Id.* ¶ 80; Ex. F.) The Archdiocese responded on June 23, 2010, and offered "support services" to Anderson without accepting his demand. (*Id.* ¶ 80; Ex. G.)

According to Anderson, the Church has settled numerous time-barred claims of sexual abuse "with the Pope's authority or approval for well in excess of 15 years." (*Id.* ¶ 54.) At the same time, however, the Holy See has "arbitrarily required" or "encouraged" less wealthy

3

Dioceses to assert the statutes of limitations or repose "to deny sexual abuse claims outright." (*Id.* ¶ 58.) Anderson contends that this "selective enforcement policy" for statutes of limitations and repose "creates judicial estoppel" and results in the Holy See's waiver of its right to interpose the statutes of limitations and repose in sexual abuse claims against the Church throughout the United States. (*Id.* ¶ 59.) He further contends that the actions of the Archdiocese in his case have similarly resulted in the waiver of the right to assert the relevant statutes of limitations and repose and amounted to equitable and judicial estoppel with respect to Anderson's claims. (*Id.* ¶¶ 57-59, 76-80.)

## PROCEDURAL HISTORY

Anderson filed a five-count putative class action complaint on October 10, 2011. (R. 1, Compl.) In Count I, Anderson brings an individual state law tort claim seeking monetary damages from the Holy See for the harm caused by the abuse he allegedly suffered as a minor; he relies on Section 1605(a)(5) of the FSIA to override the Holy See's sovereign immunity. (*Id.* ¶¶ 60-82.) The remaining counts are class claims for declaratory and injunctive relief that seek to prevent Defendants from asserting statutes of limitations and repose to defend against sexual abuse claims, or threatening to do so in anticipation of litigation. (*Id.* ¶¶ 114-31.)

On February 17, 2012, the Bishop filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or alternatively under Rule 8(a). (R. 18, Def.'s Mot.) In its supporting memorandum, the Bishop argues that dismissal under Rule 12(b)(6) is warranted because Anderson's claims are barred by the applicable statute of repose, the Bishop never waived its defenses, and its conduct does not amount to equitable or judicial estoppel with respect to Anderson's claims. (R. 19, Def.'s Mem. at 4-13.) The Bishop also argues that Anderson's

complaint should be dismissed under Rule 8 because it fails to plead facts that connect the Bishop to the alleged abuse. (*Id.* at 13-14.)[3]

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan*, 570 F.3d at 820. In ruling on a motion to dismiss, the Court construes the complaint "in the light most favorable to the nonmoving party, accept[ing] well-pleaded facts as true, and draw[ing] all inferences in her favor." *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level[.]'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plausibility" in this context does not imply that a court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 514 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.* In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

A plaintiff's failure to timely file a complaint under the governing statute of limitations is an affirmative defense; as such, it need not be anticipated by the complaint in order to survive a motion to dismiss. *Indep. Trust Corp. v. Steward Inf. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir.

---

[3] Because Anderson's claims are time-barred, the Court does not reach the Bishop's Rule 8 argument.

2012). However, when a complaint sets forth "everything necessary to satisfy the affirmative defense" and plainly reveals that an action is untimely, dismissal under Rule 12(b)(6) is appropriate. *Id.* (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)); *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010) (citations omitted) ("[I]f it is plain from the complaint that the [statute of limitations] defense is indeed a bar to the suit dismissal is proper without further pleading."). When reviewing a motion to dismiss a claim based on a state statute of limitations, courts look to state law regarding the statute of limitations and apply any state rules such as equitable estoppel that are an "integral part" of that law. *Indep. Trust Corp.*, 665 F.3d at 935 (citing *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010)).

## ANALYSIS

The Bishop contends that Anderson's claims, all of which are predicated on the abuse he allegedly suffered in the 1950s and 1960s, must be dismissed because they are barred by the Illinois statute of repose. (R. 19, Def.'s Mem. at 2.) Anderson does not dispute that his claims are all premised on the abuse he suffered in the 1960s and therefore "would or could be" barred by the statute of repose. (R. 1, Compl. ¶ 1.) Nevertheless, he argues that the Bishop's motion to dismiss should be denied because: (1) the Bishop expressly waived the statute of repose in its correspondence with Anderson and impliedly waived the statute through its policy of selective waiver of the statute in prior cases; (2) the Bishop is equitably estopped from asserting the statute of repose due to "acts or representations which caused [Anderson] to refrain from filing suit"; (3) the Bishop has selectively utilized the statute of repose in past legal proceedings and should be judicially estopped from asserting the defense with respect to Anderson's claims; (4) the Bishop is estopped by "election" from raising a limitations defense since it has settled claims in the past

6

and thus should not now be permitted to choose which cases it will settle. (R. 24-1, Pl.'s Resp. ¶¶ 16-17, 25, 35-36, 28-34.) The Court first addresses whether the Illinois statute of repose bars Anderson's claims, and then discusses the arguments raised by Anderson seeking to avoid dismissal of his complaint.

### I. The 1991 Illinois statute of repose

A statute of repose, like a statute of limitations, places a limitation on the time in which a plaintiff has to file a lawsuit. *Wisniewki v. Diocese of Belleville*, 943 N.E.2d 43, 69 (Ill. App. Ct. 5th Dist. 2011). A statute of repose is distinct from a statute of limitations in that it extinguishes liability after a fixed period of time, "regardless of when the action accrued." *Id.* Under the common law "discovery rule," courts may hold that an action accrues for statute of limitations purposes when the plaintiff "knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Id.* (citation omitted). Statutes of repose, however, "do not incorporate the discovery rule," *id.*, so they extinguish a plaintiff's claims even if the plaintiff has not discovered an injury and hence might not otherwise be barred from suing under the applicable statute of limitations. *Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1003 (Ill. App. Ct. 1st Dist. 2007). In this way, a statute of repose places "an outer limit on the 'long tail' of liability created by the common law discovery rule." *Hester v. Diaz*, 805 N.E.2d 255, 259 (Ill. App. Ct. 5th Dist. 2004).

The Bishop contends that Anderson's claims are untimely under the 1991 Illinois statute of repose ("1991 statute"), 735 Ill. Comp. Stat. § 5/13-202.2(b). (R. 19, Def.'s Mem. at 4.) Although Anderson does not dispute this, the Court briefly addresses its application to

7

Anderson's claims because the 1991 statute was repealed in 1994. The 1991 statute provided that:

> An action for damages for personal injury based on childhood sexual abuse must be commenced within 2 years of the date the person abused discovers or through use of reasonable diligence should discover that the act of childhood sexual abuse occurred and that the injury was caused by the childhood sexual abuse, but in no event may an action for personal injury based on childhood sexual abuse be commenced more than 12 years after the date on which the person abused attains the age of 18 years.

735 Ill. Comp. Stat. § 5/13-202.2(b) (West 1992). Thus, under the 1991 statute, all claims for "personal injury based on childhood sexual abuse" were required to be brought by the plaintiff's thirtieth birthday, and "[o]nce the law took effect, it effectively barred anyone over the age of 30 from bringing an action for damages for personal injury based on childhood sexual abuse." *M.E.H. v. L.H.*, 685 N.E.2d 335, 339 (Ill. 1997).

The 1991 statute was repealed effective January 1, 1994. 735 Ill. Comp. Stat. § 5/13-202.2 (West 1994). Nevertheless, it applied to "actions pending on its effective date . . . as well as actions commenced on or after that date," and the Illinois Supreme Court has held that it applied to tort actions for childhood sexual abuse even though the statute was not in effect when the abuse occurred and was repealed before the action was filed. *Johnson v. The Augustinians*, 919 N.E.2d 492, 495 (Ill. App. Ct. 1st Dist. 2009) (citing *M.E.H.*, 685 N.E.2d at 339). This is because under Illinois law, the right to assert a statute of limitations or repose against a time-barred claim vests once granted, and may not be revoked by the legislature without offending the due process protections of the Illinois constitution. *M.E.H.*, 685 N.E.2d at 339; *Doe A. v. Diocese of Dallas*, 917 N.E.2d 475, 486 (Ill. 2009).

8

Here, Anderson's claims are clearly barred by the 1991 statute of repose. The statement signed by Anderson attached to his complaint indicates that Anderson was born March 23, 1951. (R. 1, Compl., Grp. Ex. D. at 1), so Anderson turned 30 years old in 1981.[4] Because he did not seek relief before the 1991 statute went into effect, assuming his claim was still viable then, he falls into the category of plaintiffs whose claims were effectively extinguished when the 1991 statute became effective. *Johnson*, 919 N.E.2d 2d at 495 ("[O]nce the 1991 act took effect, it barred anyone over the age of 30 from bringing a personal injury action for damages based upon allegations of childhood sexual abuse); *Kuch v. Catholic Bishop of Chi.*, 851 N.E.2d 233, 236 (Ill. App. Ct. 1st Dist. 2006) ("[I]f we assume that the plaintiff's claim was still viable when the 1991 amendment took effect, that amendment effectively barred the plaintiff, who was 43 in 1991, from bringing an action for damages for personal injury based on the childhood abuse.") Additionally, since Anderson did not file this lawsuit until 2011, he did not file his claim "within a reasonable time" following the effective date of the 1991 statute. *See id.* (noting that the 1991 statute "did not instantaneously extinguish" the plaintiff's cause of action, but that the plaintiff was required to file his complaint within "a reasonable time," and that 13 years was not a "reasonable time"). Accordingly, because the Bishop acquired a vested right to invoke the statute of repose against Anderson upon passage of the 1991 statute, which it still maintains even though the statute of repose was subsequently repealed, the 1991 statute of repose bars Anderson's claims predicated on the sexual abuse he suffered in the 1950s and 1960s. *See M.E.H.*, 685 N.E.2d at 339 ("If the claims were time-barred under the old law, they remained time-barred even after the repose period was abolished by the legislature.").

---

[4] Exhibits attached to a complaint are incorporated into the pleadings for purposes of Rule 12(b) motions. *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988).

As mentioned above, Anderson does not dispute that the Illinois statute of repose bars his claims. (*See* R. 1, Compl. ¶¶ 1, 5.) Seeking to avoid dismissal of his claims, however, Anderson sets forth several theories intended to overcome this statutory bar, to which the Court now turns.

## II. Waiver

Anderson first argues that the Bishop has waived the relevant statutes of limitations and repose. (R. 24-1, Pl.'s Resp. ¶¶ 28-34.)[5] "Waiver" is the voluntary relinquishment of a known right. *People v. Blair*, 831 N.E.2d 604, 615 n.2 (Ill. 2005); *Vaughn v. Speaker*, 533 N.E.2d 885, 890 (Ill. 1988). It "arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right." *People v. Houston*, 890 N.E.2d 424, 429 n.3 (Ill. 2008). It may be manifested "expressly or by conduct inconsistent with an intent to enforce that right." *Ciers v. O.L. Schmidt Barge Lines, Inc.*, 675 N.E.2d 210, 213 (Ill. App. Ct. 1st Dist. 1996). In other words, it may "arise from acts, words, or conduct of the one waiving the right." *Sexton v. Smith*, 492 N.E.2d 1284, 1287 (Ill. 1986). If an express statement of waiver does not exist, the party who alleges implied waiver must point to "a clear, unequivocal, and decisive act" which demonstrates the requisite intentional relinquishment of the right by the other party. *Ciers*, 675 N.E.2d at 213 (citation omitted). If the parties do not dispute the material facts alleged in support of the waiver claim, and these facts support only one reasonable inference, the existence of waiver is a question of law. *Wald v. Chi. Shippers Ass'n*, 529 N.E.2d 1138, 1147-48 (Ill. App. Ct. 1st Dist. 1988). Where there is a dispute regarding the facts necessary to constitute waiver or

---

[5] The Court notes at the outset that Anderson's waiver argument is cursory, conclusory, and largely unsupported by pertinent authority. The Court cautions his counsel that "[i]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel." *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003).

"if reasonable minds might differ as to inferences to be drawn from the undisputed evidence, then the issue becomes a question of fact." *Id.* (citation omitted).

Here, the evidence that Anderson contends indicates waiver on the part of the Bishop, correspondence from the Archdiocese, is not in dispute. (R. 24-1, Pl.'s Resp. ¶¶ 16-17.) Anderson first points to a letter sent by the Bishop's attorneys to Anderson's attorneys on May 11, 2007. (*Id.*) It states, in pertinent part:

> As you know, because your client was born before January 1, 1964, his claims are barred by the statute of repose. 735 ILCS 5/13-202.2. See *M.E.H. v. L.H.*, 177 Ill.2d 207, 685 N.E.2d 335 (1997); *Galloway v. Diocese of Springfield*, 367 Ill.App.3d 997, 857 N.E.2d 737 (5th Dist. 2006); *Kuch v. Catholic Bishop of Chicago*, 366 Ill.App.3d 997, 857 N.E.2d 737 (1st Dist 2006), appeal denied 221 Ill.2d 640, 857 N.E.2d 673 (2006); *Doe v. Catholic Bishop of Chicago*, No. 04 L 002661 (Cir. Ct. of Cook Co. Sept. 15, 2005); *John Doe 85 v. The Roman Catholic Diocese of Joliet*, No. 2003-L-1011 (Cir. Ct. of DuPage County, Aug. 29, 2006).
>
> Nonetheless . . . rather than treat this as strictly a legal matter, our client would like to respond compassionately to Mr. Anderson's claims. Therefore, we are in the process of analyzing these allegations. However, before we can move forward on this, we need your demand. After we receive your demand and have completed our review, we would be pleased to discuss this claim with you.

(R. 1, Compl., Ex. C.)

Anderson argues that this letter constitutes the Bishop's "express" intent to relinquish its right to invoke the statute of repose. (R. 24-1, Pl.'s Resp. ¶¶ 16-17.) The Court disagrees and concludes that this letter is not evidence of either express or implied waiver on the part of the Bishop. Rather than relinquishing the right to interpose the statute of repose, the Bishop clearly identified the statute, asserted that it bars Anderson's claims, and cited cases in support of the assertion in the letter. Additionally, the Bishop's statement that it was "nonetheless" willing to analyze Anderson's claims and engage in settlement discussions also does not support the

11

inference that the Bishop was intentionally relinquishing its right to assert the statute. *See Salloum Foods & Liquor, Inc. v. Parliament Ins. Co.*, 388 N.E.2d 23, 28-29 (Ill. App. Ct. 1st Dist. 1979) (holding that the defendant's settlement offer made at an early stage of negotiations does not support a finding of waiver). The only inference that can reasonably be drawn from this evidence and Anderson's allegations in the complaint is that the Bishop may have been willing to consider an out-of-court settlement with Anderson, but nevertheless intended at all relevant times to reserve its right to assert the statute of repose. While the Bishop may have taken such a position for any number of reasons,[6] these reasons are immaterial to the waiver issue presented to this Court.

Anderson also contends that the Bishop "expressly waived the statute of repose defense" in a letter sent by the Bishop's attorneys on March 28, 2007. (R. 24-1, Pl.'s Resp. ¶ 25.) A review of this letter, however, reveals no "express" waiver of the statute of repose. (R. 1, Compl., Ex. B.) Instead, the letter indicates that the Archdiocesan Review Board did not find reasonable cause to suspect that one individual who allegedly sexually abused Anderson did in fact abuse him. (*Id.*) It further states that the Review Board was investigating Anderson's other allegations, and that it was "interested in learning what [Anderson] needs in order to heal." (*Id.*) Like the May 11, 2007 letter, it is not reasonable to infer from this letter that the Bishop was expressly or impliedly waiving its right to assert the statute of repose.

Finally, Anderson argues that the Bishop impliedly waived its right to assert the statute of repose by negotiating Anderson's claim for a period of five years "without ever denying Anderson's counsel's offer to mediate Anderson's claim without filing a lawsuit under a waiver

---

[6] Anderson discusses these reasons, and the Bishop's leading role in shaping Church abuse settlement policy, in depth. (*See* R. 1, Compl. ¶¶ 1-59.)

of the statute of limitations." (R. 24-1, Pl.'s Resp. ¶ 26.) This refers to the letter sent by Anderson's attorneys to the Bishop's attorneys on April 15, 2005, which states that "Mr. Anderson has agreed not to file a lawsuit against the archdiocese of Chicago but rather to submit to arbitration/mediation based on the Archdiocese agreeing not to assert a statute of limitations defense." (R. 1, Compl., Ex. A.) This argument also fails. The Bishop's "failure to deny" an offer that clearly required the Bishop's agreement cannot be interpreted as "a clear, unequivocal, and decisive act" that indicated the Bishop's intentional relinquishment of the right, *Ciers*, 675 N.E.2d at 213 (citation omitted), and any inference to the contrary would be unreasonable.

In sum, Anderson has failed to point the Court to any facts or allegations that support the inference that the Bishop expressly waived its right to invoke the statute of repose or behaved in a manner that clearly, unequivocally, and decisively demonstrated the implicit intent to do so. As such, Anderson's waiver argument fails as a matter of law.

### III. Equitable Estoppel

Anderson next contends that the Bishop is equitably estopped from invoking the statute of repose. (R. 24-1, Pl.'s Resp. ¶ 25.) Equitable estoppel is closely related to waiver, but is a distinct doctrine. *Lumbermen's Mut. Cas. Co. v. Sykes*, 890 N.E.2d 1086, 1097 (Ill. App. Ct. 1st Dist. 2008). In contrast to waiver, equitable estoppel "may arise even though there was no intention on the part of the party estopped to relinquish any existing right." *Vaughn*, 533 N.E.2d at 890. Additionally, unlike with waiver, the party claiming estoppel must act in order to complete the estoppel. *Lumbermen's Mut. Cas. Co.*, 890 N.E.2d at 1097. Under Illinois law, equitable estoppel applies to statutes of repose. *Witherell v. Weimer*, 515 N.E.2d 68, 73 (Ill. 1987).

To make out a case of equitable estoppel, the party claiming estoppel must demonstrate that: "(1) the other party misrepresented or concealed material facts; (2) the other party knew at the time the representations were made that the representations were untrue; (3) the party claiming estoppel did not know that the representations were untrue when the representations were made and when they were acted upon; (4) the other party intended or reasonably expected the representations to be acted upon by the party claiming estoppel or by the public generally; (5) the party claiming estoppel reasonably relied upon the representations in good faith and to their detriment; and (6) the party claiming estoppel has been prejudiced by his reliance on the representations." *Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000) (citation omitted). The gist of the doctrine is that "one cannot justly or equitably lull his adversary into a false sense of security, causing him to subject his claim to the bar of the statute, and then plead the very delay caused by his course of conduct." *Beynon Bldg. Corp. v. Nat'l Guardian Life Ins. Co.* 455 N.E.2d 246, 252 (Ill. App. Ct. 2nd Dist. 1983).

In support of his argument that equitable estoppel applies here, Anderson sets forth a lengthy time line listing events relevant to his claims, beginning with his birth and ending with the filing of the complaint in this case. (R. 24-1, Pl.'s Resp. ¶ 21.) What is missing, however, is any allegation that the Bishop has either misrepresented material facts or concealed them from Anderson at any time. While the Bishop did not immediately inform Anderson that his claims were time-barred when it commenced its investigation in 2005, the letter from Anderson's attorneys on April 15, 2005, to the Bishop's attorneys indicates that Anderson was already well-aware of the relevant statute of repose. (R. 1, Compl., Ex. A.) Additionally, contrary to Anderson's arguments, (*see* R. 24-1, Pl.'s Resp. ¶ 25), the Bishop's failure to deny Anderson's

14

one-sided offer to mediate his claim under a waiver of the statute of limitations and solicitation of a settlement demand do not constitute the misrepresentation or concealment of material facts.

Even more importantly, though, even assuming that the Bishop misrepresented or concealed material facts, Anderson has not alleged facts establishing reasonable and detrimental reliance on his part. According to his time line, Anderson "linked" the abuse he suffered to his mental health problems in 2002 after hearing news stories regarding other sexual abuse claims against Catholic priests, and obtained counsel at some point thereafter. (R. 24-1, Pl.'s Resp. ¶ 21.) The next relevant event listed is correspondence from Anderson's attorneys to the Bishop's attorneys on April 15, 2005, stating that Anderson would not file a lawsuit if the Bishop agreed not to assert the statute of limitations defense. (*Id.*) The time line therefore shows that all of the Bishop's statements and conduct Anderson contends he relied upon and that caused his late filing occurred in or after 2005, which is long after Anderson's claims had already expired. Given this time line, the Bishop's conduct could not have induced Anderson to delay filing his action until after it was too late; it had long been so. A party's post-expiration conduct may provide evidence of estoppel, but "where there is no pre-expiration conduct sufficient to induce any reasonable reliance, the post-expiration conduct illustrates nothing." *Axia Inc. v. I.C. Harbour Const. Co.*, 501 N.E.2d 1339, 1345 (Ill. App. Ct. 2nd Dist. 1986) (citation omitted); *accord Kheirkhavash v. Baniassadi*, 941 N.E.2d 1020, 1031 (Ill. App. Ct. 1st Dist. 2011) ("In order for a plaintiff to invoke estoppel against a statute of limitations defense, 'the plaintiff must have relied on acts or representations of the defendant which caused plaintiff to refrain from filing suit within the applicable statute of limitations.'") (citation omitted). Here, Anderson has not alleged any pre-

expiration conduct by the Bishop whatsoever. This being so, there can be no detrimental reliance and no equitable estoppel.

Seeking to avoid this result, Anderson cites *Teamsters & Employees Welfare Trust of Ill. v. Gorman Bros. Ready Mix* in support of the proposition that a statute of limitations may be extended when a defendant has promised not to interpose it, concealed a cause of action from the plaintiff, or promised to pay the plaintiff's claim. 283 F.3d 877, 881-82 (7th Cir. 2002) (citations omitted). *Teamsters*, however, is distinguishable from this case in that the conduct it describes supports a finding of equitable estoppel only if it operates to delay what might otherwise be a timely claim. *Id.* The same distinction also makes inapposite *Witherell v. Weimer*, 421 N.E.2d 869, 876 (Ill. 1981) ("*Witherell I*"). (R. 24-1, Pl.'s Resp. ¶ 19.) Accordingly, because Anderson has failed to allege the necessary elements to make out a case of equitable estoppel, the Court declines to prohibit the Bishop from interposing the statute of repose on this ground.

## IV. Judicial Estoppel

Anderson next argues that the Bishop should be judicially estopped from asserting the statute of repose. (R. 24-1, Pl.'s Resp. ¶¶ 28-34.) Judicial estoppel "is an equitable concept providing that a party who prevails on one ground in a lawsuit may not in another lawsuit repudiate that ground." *United States v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003). It operates to "protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citations omitted). Because it serves this purpose, courts may invoke the doctrine at their discretion. *Id.* Although there is no list of "inflexible prerequisites or an inflexible formula for determining the applicability of judicial estoppel," *New Hampshire*, 532 U.S. at 751, the Seventh Circuit has indicated that a party may be judicially estopped when: "(1) [its] . . . later position is

clearly inconsistent with [its] . . . earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Ogden Martin Sys. of Indianapolis v. Whiting Corp.*, 179 F.3d 523, 526 n.1 (7th Cir. 1999) (citations omitted).[7]

Anderson contends that because the Bishop has settled some time-barred claims in the past, it should now be judicially estopped from invoking the statute of repose with respect to his time-barred claims. (R. 24-1, Pl.'s Resp. ¶¶ 28-34.) This argument is unavailing for several reasons. First, Anderson has failed to allege that the Bishop has taken inconsistent positions in separate legal proceedings. Here, the Bishop contends that the 1991 statute of repose bars Anderson's claims, and that it has not waived its right to assert it. Anderson, however, does not point to a single case or allege a scenario in which the Bishop has prevailed after taking the position before a court—in his case or in prior cases—that the statute of repose does not apply or that it has waived its right to raise it.

This is not to say that a party needs to have secured a favorable judgment adopting the party's position in order to have "prevail[ed]" for the purposes of judicial estoppel. Because settlement frequently "represents capitulation . . . [p]ersons who triumph by inducing their opponents to surrender have 'prevailed' as surely as persons who induce the judge to grant summary judgment." *Kale*, 985 F.2d at 362 (citing *Maher v. Gagne*, 448 U.S. 122 (1980)). Even a settlement for the party that has made a payment to the adverse party "may be sufficient to

---

[7] Federal courts apply federal judicial estoppel rules in state law cases, *Ogden Martin Sys.*, 179 F.3d at 526 n.1, though the Seventh Circuit has used Illinois law and federal law related to judicial estoppel interchangeably because the cases use consistent approaches. *See Kale v. Obuchowski*, 985 F.2d 360, 361 (7th Cir. 1993).

17

show that the party to be estopped prevailed in the prior case regardless of whether a judicial decision was obtained." *See Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 887 (7th Cir. 2004) (nothing that a settlement benefitted the party that paid the award because the settlement released it from liability, the award was paid by its insurer, and the settlement enabled the party to avoid the possibility of appeal). Nevertheless, regardless of whether the prior proceeding resulted in a settlement, it must be clear that the party to be estopped took a contrary position during the previous underlying action. *Id.* at 888. Anderson, however, has failed to allege that the Bishop has taken the position that the statute of repose does not apply or has been waived in prior actions.

Anderson's argument also fails because he has not alleged that the facts at issue in his case and the past unrelated cases he references in which the Bishop paid a monetary settlement are the same. *See Ezekiel v. Michel*, 66 F.3d 894, 904-905 (7th Cir. 1995) ("Inconsistent positions result only when . . . [a party] raises contradictory arguments in response to the *same dry [set] of facts.*") Anderson's failure to allege these details is particularly concerning given the fact-specific nature of the allegations and time line of events in each case against the Bishop. Without knowing the facts, the Court cannot conclude that any waiver of the statute of limitations by the Bishop in the past is actually inconsistent with its current position. Likewise, Anderson has not alleged that any court has ever, at the Bishop's urging, adopted a position contrary to that advanced by the Bishop here. Accordingly, the Court easily concludes that Anderson has not satisfied the elements the Court considers in determining whether to invoke the doctrine of judicial estoppel.

**V.      Estoppel by Election**

Finally, Anderson contends that the Bishop is estopped by "election" from invoking the statute of repose with respect to his claims. (R. 24-1, Pl.'s Resp. ¶¶ 35-36.) According to Anderson, this doctrine rests upon the premise that "[o]ne who has actively co-operated with others in a particular manner, will not thereafter be heard to assert an inconsistent right." *Springfield Marine Bank v. Marbold*, 264 Ill. App. 446, 463 (Ill. App. Ct. 3rd Dist. 1931). In *Springfield Marine Bank*, the court estopped a bank from asserting a lien because it had actively participated in attempting a composition of creditors of the defendant while secretly obtaining a mortgage on certain assets through a strawman in order to obtain a secured position. *Id.* Anderson's allegations of the Bishop's practice of selectively waiving the statute of repose are not analogous to the situation in *Springfield Marine* that gave rise to estoppel. The Court therefore declines to apply the doctrine to prevent the Bishop from asserting the statute of repose in this case.

Anderson is understandably frustrated with the Bishop's offer of "support services" here when the Bishop has paid several large monetary settlements to other parties in the past. Nevertheless, he has failed to point the Court to any legal support for his claim that the Bishop cannot assert the statute of repose because it has settled with parties whose claims were time-barred in the past. Although the result may seem "unfair" to Anderson, the situation does not fit the rubric of any of the doctrines he has asserted in seeking to avoid the dismissal of his

complaint against the Bishop.[8] This Court's sympathy and empathy for the alleged injuries suffered by Anderson cannot control the outcome of this case.

## CONCLUSION

For the foregoing reasons, the Bishop's motion to dismiss (R. 18) is GRANTED.[9]

Entered: /s/ Ruben Castillo

**Judge Ruben Castillo**
**United States District Court**

**Dated**: July 19, 2012

---

[8] As an alternative to his arguments discussed above regarding waiver and estoppel, Anderson states that the Bishop's motion should be denied because it "raises a number of fact issues or mixed issues of law and fact that plaintiff is entitled to prove[.]" (R. 24-1, Pl.'s Resp. ¶¶ 6, 15, 40.) He fails, however, to identify any facts in dispute or other issue that precludes the Court from determining as a matter of law that his complaint is time-barred, to cite pertinent authority, or to develop the argument in any way. Accordingly, the Court deems this conclusory and unsupported argument waived. *See Holm,* 326 F.3d at 877 ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

[9] The Bishop requests that the Court dismiss Anderson's complaint in its entirety. (R. 19, Def.'s Mem. at 15.) The Court declines to dismiss Anderson's complaint against the Holy See, however, as the Holy See has yet to appear and the Bishop's grounds for dismissal and Anderson's arguments in response were specific to the conduct of the Bishop.